UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHALANX GROUP INTERNATIONAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-3002-B |
| | § | |
| CRITICAL SOLUTIONS INTERNATIONAL, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Critical Solutions International (CSI)'s Motion to Dismiss All Counts of First Amended Complaint (Doc. 18). Because the Court concludes that all of Plaintiff Phalanx Group International's claims are barred under the doctrine of res judicata, the Court **GRANTS** CSI's motion (Doc. 18) and **DISMISSES** Phalanx's claims **WITH PREJUDICE.**

**I.**

**BACKGROUND**

This action is an attempt to revive an ongoing contractual dispute over commission owed on a military-vehicle sale. In sum, Phalanx seeks to recover damages from CSI based on CSI's failure to compensate Phalanx for its facilitation of the sale of seven "Husky" vehicles from CSI to the Kingdom of Saudi Arabia (KSA). *See* Doc. 15, First Am. Compl. (FAC), ¶¶ 7–14.

This is not the first lawsuit brought by Phalanx seeking such recovery; rather, this Court has already entertained claims by Phalanx against CSI premised on the sale of the seven Husky vehicles in a previous lawsuit ("Prior Action"). While the Court need not detail every allegation and fact at

issue in the Prior Action, the Court offers a brief summary of the Prior Action, followed by an overview of the action at hand below.

A.   *Prior Action*

Phalanx filed the Prior Action on January 30, 2018. *See* Compl., *Phalanx Grp. Int'l v. Critical Sols. Int'l*, No. 3:18-cv-0244-B (N.D. Tex. Oct. 22, 2019) (caption collectively cited as "Prior Action"), ECF No. 1. Phalanx alleged, among other claims, a breach-of-contract claim seeking to recover commission for its facilitation of the sale of seven Husky vehicles, as well as for its facilitation of additional, unsubstantiated sales, to the KSA. *See id.* ¶¶ 32–35. To allege the existence of a contract between the parties, Phalanx stated that the parties entered a Sales Representation Agreement (SRA) on December 12, 2013, as well as another SRA on December 17, 2013. *Id.* ¶¶ 22–23. Both agreements, Phalanx explained, were amended various times, but Phalanx contended that the December 12, 2013 SRA governed the dispute. *Id.* ¶¶ 24–25. To further substantiate its breach-of-contract claim, Phalanx alleged that it demanded payment for the commission owed in October 2017, but CSI refused to pay. *Id.* ¶¶ 15, 35–36.

Following a motion to dismiss from CSI, the Court held that the December 17, 2013 SRA ("Governing SRA"), rather than the December 12, 2013 SRA, governed the parties' relationship and thus dismissed Phalanx's breach-of-contract claim without prejudice. Mem. Op. & Order at 3–4, Prior Action, ECF No. 24.

Thereafter, in its first amended complaint (FAC), Phalanx alleged a breach-of-contract claim premised on the Governing SRA. *See* FAC ¶ 16, Prior Action, ECF No. 25. Phalanx again alleged that CSI failed to pay Phalanx its commission owed on the seven-Husky sale, as well as on other unspecified sales. *Id.* ¶¶ 27–31. In its first amended complaint, Phalanx also clarified that the parties

terminated their contract on March 27, 2016, and Phalanx attached the notice of termination verifying this. *Id.* ¶ 15; *see id.* at 27 (Ex. D).

Ruling upon another motion to dismiss from CSI, the Court dismissed Phalanx's breach-of-contract claims without prejudice. Mem. Op. & Order at 16, Prior Action, ECF No. 36. As to Phalanx's claim for commission on the seven-Husky sale, the Court concluded that the Governing SRA, upon which Phalanx "solely" relied to support its claim, did not provide commission for the seven-Husky sale. *Id.* at 11–12. With respect to Phalanx's claim for commission on unspecified sales, the Court held that Phalanx's allegations were "too sparse to give rise to more than a speculative inference that additional Huskys were sold and that a dispute over these sales [was] ripe." *Id.* at 14. Nonetheless, the Court permitted Phalanx to again amend its complaint, instructing Phalanx that if it was "continuing to assert claims for both the seven FMS Huskys and additional Husky sales, Phalanx should specifically and separately articulate the basis for its claims, be it on the [Governing SRA], subsequent amendments, or some other grounds." *Id.* at 16.

In response, Phalanx filed its second amended complaint (SAC), once again alleging a breach of the Governing SRA. SAC ¶ 28, Prior Action, ECF No. 37. To support its breach-of-contract claims for both the seven-Husky sale and additional sales, Phalanx alleged that a clause of the SRA, which governed commission on post-termination sales, mandated that CSI pay commission on both sets of sales. *Id.* ¶¶ 36–37.

But in evaluating CSI's third motion to dismiss, the Court concluded that Phalanx's allegations again fell short. With respect to the seven-Husky-sale claim, the Court reasoned that even assuming the seven-Husky sale fell within the purview of the post-termination provision, the Governing SRA's payment provision was more specific and provided no commission on the sale.

Mem. Op. & Order at 8–9, Prior Action, ECF No. 44. As for Phalanx's claim to recover on additional sales, the Court again found Phalanx's allegations insufficient to substantiate the existence of additional sales. *Id.* at 13–14. Accordingly, the Court dismissed all of Phalanx's claims. *Id.* at 16. Further, the Court rejected Phalanx's attempt in its second amended complaint to reserve the right to amend, holding that Phalanx's right to amend had passed. *Id.* at 15.

Days after the dismissal, Phalanx sought clarification on whether "the dismissal of [Phalanx's] claims for 'additional' and future sales was without prejudice." Pl.'s Mot. for Clarification at 2, Prior Action, ECF No. 46. On November 26, 2019, the Court responded, informing the parties that though a dismissal operates as an adjudication on the merits unless the dismissal order states otherwise, a dismissal based on a lack of ripeness is not an adjudication on the merits. Order at 1–2, Prior Action, ECF No. 47 (citing, *inter alia*, Fed. R. Civ. P. 41(b)). Because the Court dismissed "the claim for additional Husky sales based on a lack of ripeness," the Court explained, this dismissal was not an adjudication on the merits and thus was not a dismissal with prejudice. *Id.* at 2. The Court advised Phalanx that "should [it] acquire information sufficient to allege a claim for commission owed on additional Husky sales, [it] may file a new lawsuit bringing such a claim." *Id.*

B.   *Current Action*

Less than a month later, Phalanx did file a new lawsuit, which is before the Court now. But this lawsuit has nothing to do with additional sales. *See* Doc. 15, FAC, ¶¶ 7–19. Rather, Phalanx again seeks to litigate whether it is entitled to commission on the seven-Husky sale. *See id.*

This time around, Phalanx brings two claims: breach of contract for CSI's failure to pay commission on the seven-Husky sale, and fraud based on CSI's representations that it would pay this

commission. *Id.* ¶¶ 20–27, 28–43.[1]

To support its breach-of-contract claim, Phalanx brings a different theory of recovery: CSI owed Phalanx commission based on the March 27, 2016 notice of termination, rather than the Governing SRA. *Id.* ¶ 22. But CSI's obligation to pay, Phalanx alleges, was triggered only after Phalanx submitted an invoice to CSI on December 3, 2019—one week after the Court's order clarifying its dismissal of the Prior Action. *See id.* ¶ 25; Order at 2, Prior Action, ECF No. 47 (issued on Nov. 26, 2019). Though the notice of termination makes no mention of submitting an invoice, *see* Doc. 15-1, Notice of Termination, 1, Phalanx alleges that CSI breached the notice by rejecting Phalanx's December 2019 demand for payment pursuant to the invoice. Doc. 15, FAC, ¶ 26.

Phalanx's fraud claim in this action arises from representations made by CSI in 2017, as well as from the 2016 notice of termination. *Id.* ¶¶ 29–32. Phalanx alleges that these representations, in which CSI expressed that it would pay the commission, were false. *Id.* ¶¶ 36–37. Further, in reliance on CSI's promises to pay, Phalanx explains, Phalanx submitted its December 2019 invoice, but CSI refused to pay the commission. *Id.* ¶¶ 41–42.

Now, CSI seeks dismissal of all of Phalanx's claims, arguing that they are barred under res judicata. *See* Doc. 18, Def.'s Mot. to Dismiss; Doc. 19, Def.'s Br. Additionally, CSI urges the Court to "take such additional actions as it deems necessary to deter Phalanx from further abuse of the litigation process to pursue its unmeritorious claim for a commission on the seven Husky vehicles." Doc. 19, Def.'s Br., 9. The Court has received all briefing on CSI's motion; thus, it is now ripe

---

[1] Phalanx also seeks attorney's fees under Texas Civil Practice and Remedies Code §§ 38.001 and 38.002. Doc. 15, FAC, ¶¶ 44–45.

for review.[2]

## II.

## LEGAL STANDARD

A.     *Motion to Dismiss under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[2] In CSI's brief in support of its motion, CSI incorporates the arguments it made in a moot motion to dismiss. Doc. 19, Def.'s Br., 2. Likewise, Phalanx's response to the pending motion incorporates arguments from its response to the moot motion. Doc. 20, Pl.'s Resp., 2. Accordingly, the Court cites to both the briefing on the current motion and the briefing on the moot motion throughout this Order.

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotations and alterations omitted).

B.     *Res Judicata*

Complaints comprised of claims that are barred by res judicata fail to state a claim upon which relief can be granted. *Wininger v. Bank of Am., N.A.*, 2015 WL 1737617, at *3 (E.D. Tex. Apr. 14, 2015), *aff'd*, 621 F. App'x 297 (5th Cir. 2015). Accordingly, "[d]ismissal under Rule 12(b)(6) on *res judicata* grounds may be appropriate when the elements of *res judicata* are apparent on the face of the pleadings." *Dean v. Miss. Bd. of Bar Admissions*, 394 F. App'x 172, 175 (5th Cir. 2010) (per curiam) (citation omitted). When ruling on a motion to dismiss based on res judicata, "the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *Id.* (alteration incorporated) (citation and quotations omitted).

"The preclusive effect of a prior federal court judgment is controlled by federal res judicata rules." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000); *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 664 (5th Cir. 1994). According to the Fifth Circuit, res judicata bars a case when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).

### III.

### ANALYSIS

CSI moves to dismiss both of Phalanx's claims based on res judicata. *See* Doc. 19, Def.'s Br.,

7. Additionally, as to Phalanx's breach-of-contract claim, CSI asserts that the notice of termination is not a contract. *See id.* at 5. Further, with respect to Phalanx's fraud claim, CSI contends that Phalanx has failed to sufficiently allege reliance on CSI's alleged misrepresentations. *Id.* at 8.

For the reasons stated below, the Court concludes that res judicata bars both of Phalanx's claims. Accordingly, the Court declines to reach the remaining arguments regarding the merits of Phalanx's claims.

A. *Res Judicata Bars Phalanx's Claims.*

As stated above, res judicata bars a suit when: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Petro-Hunt, L.L.C.*, 365 F.3d at 395.

Phalanx concedes that the first two elements of res judicata are satisfied. But Phalanx argues that the third element, entry of final judgment, is not satisfied, because the final judgment in the Prior Action did not cover unripe claims. Doc. 16, Pl.'s Incorporated Br., 3. Further, Phalanx argues that the fourth element, whether the same cause of action is involved in both cases, is not satisfied either. *Id.* at 5.

Below, the Court analyzes whether the same cause of action is involved in the Prior Action and the action at hand. The Court first lays out the transactional test, which governs whether multiple suits involve the same cause of action. In this section, the Court also addresses Phalanx's mistaken application of collateral estoppel principles in its briefing.

Then, the Court applies the transactional test to Phalanx's claims, concluding that these claims arise from the same nucleus of operative facts as those in Phalanx's Prior Acton, and that

Phalanx could have brought the claims in the Prior Action.

Finally, the Court explains why it rejects Phalanx's arguments that its December 2019 demand for payment created claims that were unripe in the Prior Action and premised on distinct facts. In its discussion of ripeness, the Court also dispels Phalanx's argument that the third res judicata element—whether a final judgment has been entered—is not satisfied.

Overall, because the Court has entered a final judgment, and the Prior Action involves the same cause of action as the present lawsuit, the Court dismisses both of Phalanx's claims based on res judicata.

### 1. The transactional test governs whether two suits involve the same claim or cause of action.

The Court uses the transactional test to assess whether multiple suits involve the same claim or cause of action. *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 870–71 (5th Cir. 1984). The transactional test works to bar a plaintiff's potential claims that concern "any part of the transaction, or series of connected transactions, out of which the original action arose." *Maxwell v. U.S. Bank Nat'l Ass'n*, 544 F. App'x 470, 472 (5th Cir. 2013) (per curiam) (quoting *In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010)). "The critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Petro-Hunt, L.L.C.*, 365 F.3d at 396 (emphasis in original) (citation, quotations, and alterations omitted). "Thus, the Court must look beyond claims that were actually litigated and focus instead on all issues that could have been raised in the previous proceeding given the same nucleus of operative facts." *1999 McKinney Ave. No. 807 Land Tr. v. HSBC Bank USA, Nat'l Ass'n*, 2014 WL 2573896, at *4 (N.D. Tex. June 5, 2014).

Accordingly, the Court rejects Phalanx's suggestion that res judicata bars only the

reconsideration of facts and issues that the Court actually considered in reaching its judgment in the Prior Action. *See* Doc. 16, Pl.'s Incorporated Br., 5–7. This mistaken proposition appears to arise from Phalanx's misplaced reliance on two cases.

First, Phalanx relies upon *In re Ark-La-Tex Timber Company, Incorporated*, for the proposition that "the application of res judicata is limited only to issues of fact or law necessary to the decision in the prior judgment." Doc. 16, Pl.'s Incorporated Br., 5–6 (citing 482 F.3d 319, 330 (5th Cir. 2007)). But in stating this proposition, the Fifth Circuit quoted its opinion in *Rhoades v. Penfold*, 694 F.2d 1043, 1048 (5th Cir. 1983). *See Ark-La-Tex*, 482 F.3d at 330. In *Rhoades*, the Fifth Circuit stated: "[T]he application of res judicata has been limited to issues of fact or law necessary to the decision in the prior judgment. *In other words*, the allegedly barred claim must arise out of the same nucleus of operative facts involved in the prior litigation." *Rhoades*, 694 F.2d at 1048 (emphasis added). Thus, the Fifth Circuit's language in *Rhoades* and *Ark-La-Tex* only indicates what this Court has already recognized—res judicata bars claims that "arise out of the same nucleus of operative facts involved in" the Prior Action. *See id.*

Second, Phalanx cites *Lubrizol Corporation v. Exxon Corporation*, 632 F. Supp. 326, 331 (S.D. Tex. 1986), to suggest that res judicata bars only issues actually ligated in the Prior Action. Doc. 16, Pl.'s Incorporated Br., 6. However, the court in *Lubrizol* was discussing collateral estoppel, which "prevents a plaintiff from relitigating an issue which the defendant asserts was raised, pled, and adjudged in [] earlier litigation." *Lubrizol*, 632 F. Supp. at 331. Collateral estoppel is a "separate" doctrine from res judicata:

> [R]es judicata bars the litigation of claims that either have been litigated or should
> have been raised in an earlier suit, while collateral estoppel precludes relitigation of
> only those issues actually litigated in the original action, whether or not the second

suit is based on the same cause of action[.]

*Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (citations and quotations omitted). Here, the Court is analyzing res judicata and thus examines whether the present claims have been litigated, or should have been raised, in the Prior Action.

Having clarified the scope of the Court's inquiry under the transactional test, the Court now turns to Phalanx's claims.

> 2. Applying the transactional test, the Court concludes that Phalanx's lawsuits arise from the same nucleus of operative facts.

The Court concludes that Phalanx's claims in the present lawsuit and those in the Prior Action arise from the same nucleus of operative facts. In both the Prior Action and the case at hand, Phalanx claims five-percent commission owed by CSI for Phalanx's facilitation of the same sale of seven Husky vehicles to the KSA. *Compare* Doc. 15, FAC, ¶¶ 10, 15, 22 *with* SAC ¶¶ 22, 35, Prior Action, ECF No. 37. Not only is the same seven-Husky sale at issue in both actions, but Phalanx relies upon much of the same evidence—the parties' Governing SRA and CSI's notice of termination. *Compare* Doc. 15, FAC, ¶¶ 10–11 *with* SAC ¶¶ 21, 31, Prior Action, ECF No. 37.

Further, Phalanx could have alleged a breach of the notice of termination, as well as fraud, in the Prior Action. To determine whether Phalanx's claims could or should have been brought in the Prior Action, the Court examines whether: 1) Phalanx had "actual or imputed awareness" at the time of the Prior Action "of a real potential for claims" against CSI of the same type currently being asserted; and 2) whether the Court, in the Prior Action, possessed procedural mechanisms through which Phalanx could have pursued these claims against CSI. *See In re Intelogic Trace*, 200 F.3d 382, 388 (5th Cir. 2000).

First, it is clear that Phalanx had awareness of the potential to bring both claims asserted here in the Prior Action. Indeed, Phalanx did bring a breach-of-contract claim against CSI, and it presented to the Court the very "contract" it now relies upon. *See* SAC ¶¶ 21, 27–50, Prior Action, ECF No. 37. Moreover, Phalanx was aware of its ability to bring a fraud claim, as the fraud claim is premised upon CSI's alleged promises from 2016 to 2017 to pay the commission owed—promises occurring long before Phalanx brought the Prior Action. *See* Doc. 15, FAC, ¶¶ 29–33 (citing Doc. 15-1, Notice of Termination (Ex. A), Doc. 15-2, March 2017 Letter (Ex. B), & Doc. 15-3, July 2017 Letter (Ex. C)).

Second, in the Prior Action, this Court possessed procedural mechanisms for allowing Phalanx to litigate its claims. In the Prior Action, Phalanx received three opportunities to bring its claims. *See* Compl., Prior Action, ECF No. 1; FAC, Prior Action, ECF No. 25; SAC, Prior Action, ECF No. 37. Indeed, the Court even stated, when dismissing Phalanx's first amended complaint, "If Phalanx is continuing to assert claims for both the seven FMS Huskys and additional Husky sales, Phalanx should specifically and separately articulate the basis for its claims, be it on the [Governing SRA], subsequent amendments, or some other grounds." Mem. Op. & Order at 16, Prior Action, ECF No. 36.

Thus, the Court concludes that Phalanx's present claims are based on the same nucleus of operative facts as those in the Prior Action, and Phalanx could have asserted its new claims in the Prior Action. The Court further elaborates upon Phalanx's ability to bring its new claims in the Prior Action below.

> a.  *Phalanx's breach-of-contract claim*

The fact that Phalanx now brings a breach-of-contract claim under the termination notice,

rather than the Governing SRA, does not allow Phalanx to evade the application of res judicata. Indeed, the Fifth Circuit has explicitly rejected this notion. *See Agrilectric Power Partners, Ltd.*, 20 F.3d at 665. In *Agrilectric*, the Fifth Circuit reasoned that where a plaintiff sought to recover for the same injury in two separate actions by asserting claims "based on different contracts" in each action, this did "not transform the [plaintiff's] theories into separate causes of action." *Id.* The court noted that it was not examining "a situation in which legal or procedural hurdles prevented [the plaintiff] from timely asserting its theory; rather, [the plaintiff] could have introduced the theory earlier but, for whatever reason, opted not to do so." *Id.* Given that both of the plaintiff's actions "involved the same nucleus of operative facts," the Fifth Circuit affirmed the district court's application of res judicata. *Id.*

Similarly, here, Phalanx could have asserted a breach of the termination notice in the Prior Action. In fact, the Court suggested the assertion of this theory when granting Phalanx its second opportunity to amend by stating, "If Phalanx is continuing to assert claims for . . . the seven FMS Huskys . . . , Phalanx should specifically and separately articulate the basis for its claims, be it on the [Governing SRA], subsequent amendments, or some other grounds." Mem. Op. & Order at 16, Prior Action, ECF No. 36. Thus, Phalanx could have asserted a breach of the termination notice, but it "opted not to do so." *See Agrilectric*, 20 F.3d at 665.

### b. Phalanx's fraud claim

Likewise, though Phalanx did not assert a fraud claim in the Prior Action, Phalanx could have done so. The Fifth Circuit has recognized that where a fraud claim arises from the "same transaction" as a breach-of-contract claim alleged in a previous lawsuit, it is barred by res judicata, provided the other prerequisites to the application of res judicata are satisfied. *See Marshall*

*Contractors, Inc. v. Integrated Gas Sys., Inc.*, 1996 WL 762795, at *1–2 (5th Cir. Dec. 11, 1996) (unpublished). "Whether the duties allegedly owed to [the plaintiff] by [the defendants] and allegedly breached in the [subsequent tort action] are legally independent of those imposed by contract is immaterial[.]" *Id.* at *2.

In the present action, Phalanx's fraud claim is premised upon CSI's failure to pay Phalanx commission on the seven-Husky sale. *See* Doc. 15, FAC, ¶ 29. Though Phalanx cites to representations from CSI that Phalanx did not necessarily rely upon in the Prior Action, these statements occurred on March 27, 2016, March 21, 2017, and July 25, 2017—well before January 30, 2018, the date Phalanx filed the Prior Action. *See id.* ¶¶ 29–33 (citing Doc. 15-1, Notice of Termination (Ex. A), Doc. 15-2, March 2017 Letter (Ex. B), & Doc. 15-3, July 2017 Letter (Ex. C)); *see generally* Compl., Prior Action, ECF No. 1. Thus, Phalanx's fraud claim derives from the "same transaction" as its breach-of-contract claim in the Prior Action, see *Marshall Contractors*, 1996 WL 762795, at *2, and Phalanx could have brought the fraud claim in the Prior Action.

3. <u>The Court rejects Phalanx's contention that because of its December 2019 demand, Phalanx's claims just became ripe and rest on different facts than the claims in the Prior Action.</u>

Finally, Phalanx's argument premised upon its new "demand for payment" does not alter the Court's conclusion. Specifically, Phalanx repeatedly asserts that its present claims for recovery on the seven-Husky sale did not become ripe until Phalanx demanded payment in December 2019, and thus the claims are not barred by res judicata. *See, e.g.*, Doc. 16, Pl.'s Incorporated Br., 4. The Court rejects this argument for two reasons: (1) in the Prior Action, the Court adjudicated Phalanx's ripe claim for commission on the seven-Husky sale on the merits; and (2) Phalanx's renewed demand is not a new fact precluding the application of res judicata.

First, the Court notes that Phalanx's contention—that its claim for recovery on the seven-Husky sale became ripe after the Prior Action—contradicts the Court's holding in the Prior Action. In the Prior Action, the Court dismissed the claim premised upon the seven-Husky sale with prejudice, whereas the claim for "additional Husky sales" was dismissed based on a lack of ripeness, and, therefore, without prejudice. *See* Mem. Op. & Order at 12, Prior Action, ECF No. 46 (dismissing the breach-of-contract claim pertaining to the seven-Husky claim based on Phalanx's failure to sufficiently allege the existence of a contract); Order at 2, Prior Action, ECF No. 47 (clarifying that the Court's dismissal of the "breach-of-contract claim for additional sales" was without prejudice). Had Phalanx's claim for commission on the seven-Husky sale not yet ripened at that point, the Court would have dismissed that claim without prejudice, too. Indeed, if the seven-Husky-sale claim had not been ripe, the Court would not have spent nearly two years entertaining it. But because the claim was ripe, as CSI had refused payment of the seven-Husky commission, the Court dismissed the claim with prejudice. *See* Compl. ¶ 35, Prior Action, ECF No 1; FAC ¶ 30, Prior Action, ECF No. 25; SAC ¶ 49, Prior Action, ECF No. 37 (alleging CSI "has refused to pay the contractually obligated commission").

Thus, the Court rejects Phalanx's suggestion that its claim for recovery on the seven-Husky sale did not ripen until after the Prior Action. As a result, the Court necessarily rejects Phalanx's contention that the Court did not enter a final judgment on the merits of Phalanx's seven-Husky-sale claim in the Prior Action. *See* Doc. 16, Pl.'s Incorporated Br., 3; Final J., Prior Action, ECF No. 45.[3]

---

[3] In further support of its ripeness argument, Phalanx claims that "[u]nder the Termination Agreement, [CSI's] payment obligation is not triggered unless and until [Phalanx] submits an invoice." Doc. 16, Pl.'s Incorporated Br., 4. But the notice of termination, which Phalanx attached to its complaint, contains no mention of the submission of an invoice. *See* Doc. 15-1, Notice of Termination, 1 (Ex. A). Thus, the

Second, Phalanx's December 2019 demand does not create a factually distinct claim premised on the seven-Husky sale. As discussed above, the claims at issue here are based on the same nucleus of operative facts as those at issue in the Prior Action. *See supra* Section III.A.2. Phalanx cannot now merely assert a "new fact[] . . . to sidestep the *res judicata* roadblock." *See Hall v. United States*, 2008 WL 276397, at *6 (E.D. Tex. Jan. 30, 2008); *see also Cervantes v. Ocwen Loan Servicing*, 2019 WL 6003129, at *5 (S.D. Tex. Aug. 28, 2019) ("Simply alleging additional facts . . . does not survive the defense of res judicata.").

Rather, "[i]n order for new facts to constitute a new cause of action and thus allow a claim to be relitigated, those facts must be both 'significant' and create 'new legal conditions.'" *Wilson v. Lynaugh*, 878 F.2d 846, 851 (5th Cir. 1989) (citation omitted). Phalanx's December 2019 demand and CSI's subsequent refusal to pay fails under both prongs: at the time of the demand, CSI had already refused payment of commission on the seven-Husky sale. *See* Compl. ¶ 35, Prior Action, ECF No. 1; FAC ¶ 30, Prior Action, ECF No. 25; SAC ¶ 49, Prior Action, ECF No. 37 (alleging CSI "has refused to pay the contractually obligated commission"). Accordingly, the Court rejects Phalanx's suggestion that the December 2019 demand and refusal to pay creates an entirely separate cause of action. *See* Doc. 20, Pl.'s Br., 3.

Overall, because all four elements of res judicata are satisfied here, the Court **DISMISSES** Phalanx's breach-of-contract and fraud claims as barred under res judicata.[4]

---

Court is puzzled by this argument. Irrespective of the argument, however, it is clear that Phalanx's claim for commission on the seven-Husky sale was ripe when the Court entered a final judgment in the Prior Action.

[4] Because the Court dismisses both of these claims, the Court dismisses Phalanx's claim for attorney's fees, too. *See Bennigan's Franchising Co., LLC, v. Team Irish, Inc.*, 2011 WL 3903068, at *3 (N.D. Tex. Sept. 6. 2011) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.") (citation omitted).

IV.

CONCLUSION

As the Fifth Circuit has stated, "Plaintiffs are not given a second chance to prove their claims; they must do it right the first time." *Cervantes*, 749 F. App'x at 245. Here, Phalanx received its first—and, arguably, its second and third—chance to recover on the seven-Husky sale in the Prior Action. Thus, the Court **GRANTS** CSI's motion (Doc. 18) and **DISMISSES** Phalanx's claims **WITH PREJUDICE** as barred by res judicata.

Further, the Court warns Phalanx that its attempt to manufacture "new" claims for recovery on the seven-Husky sale has wasted the time and resources of the Court, the parties, and counsel. If Phalanx again attempts to circumvent the Court's decision in the Prior Action, which dismissed Phalanx's seven-Husky-sale claim with prejudice, the Court will take additional action to deter re-litigation of this issue.

**SO ORDERED.**

**SIGNED: May 4, 2020**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE